No. 119

### GEORGE RICKEY v. L. H. BAUGHMAN

No. 18321, filed in Supreme Court
Jan. 21, 1924. 2 Abs. 83
Error to Athens County Appeals

297. CONTRACTS—To make and undue influence in securing.

Mary Jane Rickey died leaving one heir. After her death, on motion of one Martin, Baughman was appointed administrator of her estate consisting of a house and lot. A petition was filed in the Athens County Probate Court, alleging that she had the title to the real estate before her death, when she had entered into a contract in writing with Mr. Martin to sell and convey it to him for $1,000, of which $100 was paid, and the balance was to be paid as per the written agreement.

The defendant denied that Rickey entered lawfully into the agreement, and further alleged that at the date of the agreement, she was not of sound mind and memory and could not execute a binding contract and that Martin used undue means to induce her to affix her name to the contract.

Upon the issue of incapacity and undue influence, the cause was tried in Probate Court, which found in favor of Rickey. Appeal was taken to Common Pleas. A jury was demanded, request for which was denied. The Common pleas sustained the finding of the Probate Court. The Court of Appeals affirmed the Common Pleas. Error was further prosecuted to the Supreme Court, as above.

**Attorneys**—Randall Lively, Jackson, for Rickey; Foster & Wells and Emmett Keenan, Athens, for Baughman.

---

No. 120

### NEW PRAGUE MILLING CO v. FISHER

Error to Columbiana Appeals
No. 18338, filed in Supreme Court
Jan. 25, 1924. 2 Abs. 98.

297. CONTRACTS—Construction of milling agreement and sale of flour.

This action was to recover damages in a contract for the sale of flour which provided that the milling company was to sell Fisher 700 barrels of flour to be shipped within sixty days from March 9, 1920, on directions to be furnished by the buyer. If directions would not be furnished within the sixty days, then the contract could automatically extend for periods of thirty days at a time until Fisher would order out the flour or until the milling company would terminate the contract for his failure to do so. And it provided that in event of the contract being so terminated the Milling Company would be entitled to recover the difference between the price of No. 1 Northern Wheat at the time of the termination of the contract and its date, March 9, also two cents per bushel per month during the time the wheat would be carried and four cents per bushel on the wheat necessary to manufacture the flour.

The Milling Company purchased the wheat necessary to make the flour, and in May, 1920, ground up one-half of it and shipped the flour to the defendant, which he received and paid for in August, 1920; it ground up the balance and shipped the flour to defendant, who refused to receive it, and it then sold the flour to a third party and afterwards, in October, the company terminated the contract.

The Court of Appeals held that the grinding of the then remaining half of the wheat in August, 1920, and selling the flour made from the same to another party, ended the contract. The questions are whether the contract means that the Milling Company was to buy, on the date of the contract, the wheat necessary to make the flour and carry it until the flour would be ordered by Fisher, or until the contract would be terminated by reason of his breach, and whether when the company ground up all the wheat and shipped one-half of the flour to Fisher and sold the other half to some one else, it could afterwards claim the damages according to the contract, and whether the contract, in so far as damages are concerned, is illegal because such damages are a penalty, or, whether the contract is legal, the contract damages being liquidated damages.

**Attorneys**—B. L. Bennett, East Liverpool, for Milling Co.; Lones, Hill & Davidson, East Liverpool, for Fisher.